IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 20 CR 111-09 |
| | Judge Virginia M. Kendall |
| VASILIOS PRASSAS | |
| Defendant. | |

**DEFENDANT'S CLARIFICATIONS AND OBJECTIONS
TO THE PRESENTENCE INVESTIGATION REPORT; AND
POSITION PAPER AND COMMENTARY ON SENTENCING FACTORS**

Defendant **Vasilios Prassas**, by and through his attorneys, **Cheronis, Parente & Levitt LLC,** pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure, the opinions of the United States Supreme Court in *United States v. Booker,* 543 U.S. 220 (2005), *Rita v. United States,* 551 U.S. 338 (2007), *Gall v. United States,* 552 U.S. 38 (2007), *Kimbrough v. United States,* 552 U.S. 85 (2007), and *Nelson v. United States,* 555 U.S. 350 (2009), as well as 18 U.S.C. **§** 3553(a), respectfully submits his Clarifications and Objections to the Presentence Investigation Report (hereinafter "PSI"); and Position Paper and Commentary on Sentencing Factors.

**I.     Introduction**

Vasilios Prassas, the son of first generation immigrants, has spent has life working tirelessly in the restaurant industry. His parents taught him the importance of hard work, of family, community, and just generally being a good, kind, caring person. While that all is certainly a theme, there is hardly one singular narrative that counsel can provide the Court to describe what a dynamic human being he is.

Indeed, Mr. Prassas is also newly married with his first child expected in mid-July, and understandably eager to start the next chapter of his life as a dedicated and loving father. Despite all that, this case proves that Mr. Prassas is far from perfect as we all are, and his life, too, is not without its shortcomings. He has suffered throughout his adult life from a crippling gambling addiction that no doubt is the cause for his involvement in this illegal venture, and the reason for his conduct that will bring him before the Court on the day of sentencing.

Serious as this offense is, for his role, it is not one requiring a custodial component. Mr. Prassas was not a leader or a manager of the offense. It did not involve threats or violence. He himself was very much victimized by the operation. The government itself fairly described how Mr. Delgiudice would forgive portions of Mr. Prassas's debt, which Mr. Prassas viewed as an act of friendship, but was in fact a way for Mr. Delgiudice to exploit Mr. Prassas's addiction and keep him coming back to gamble more. Dkt. # 344 p. 3. Mr. Prassas has no criminal history. He has been gainfully employed his whole life. He enjoys deep connections to his family and community and has a newborn child on the way. Given his relative role in the offense, the sentences his codefendants have already received, and for the reasons that follow, Mr. Prassas and counsel requests that this Court impose a sentence of probation, which sentence is sufficient yet not greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a).

II.   **Clarifications and Objections to the Presentence Investigation Report**

    A. **Objection to Certain Proposed Conditions of Probation (pp. 15-20)**

Conditions of supervised release, or here as is being requested, probation, carry the force of law and allow the Court to imprison a defendant who violates any one of them. *See* 18 U.S.C. §§ 3583(e)(3), 3565(a). They must therefore be "(a) appropriately tailored to the defendant's offense,

personal history and characteristics; (b) involve no greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, protection of the public, and rehabilitation; and (c) sufficiently specific to place the defendant on notice of what is expected." *United States v. Kappes*, 782 F.3d 828, 847 (7th Cir. 2015); 18 U.S.C. § 3583(d)(1)-(3). Moreover, sentencing courts are required to define supervised release conditions in a manner that provides defendants with clear notice of what the condition requires, as well as an adequate rationale for imposing the condition. *See United States v. Adkins*, 743 F.3d 176, 194 (7th Cir. 2014); *see also United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014). The Court has a number of options before it in fashioning the length and terms of a potential sentence for Mr. Prassas. It certainly can and should consider imposing many of the appropriate terms recommended by the probation officer in lieu of a period of incarceration, both for Mr. Prassas and society—after of course balancing the mitigating information presented herein and all other required considerations. With these principles in mind, Mr. Prassas, through counsel, poses the following objections and/or requested modifications to the PSI's recommended conditions of supervised release:

**Discretionary Condition # 17.** The probation officer has proposed a term of home detention of six months be imposed as part of Mr. Prassas's sentence. While he and counsel will defer to the Court regarding the propriety of this condition, it does not seem entirely necessary on balance after considering all of the § 3553(a) factors.

**Special Conditions # 5-7.** Counsel does not believe a fine is appropriate under the circumstances. Mr. Prassas's monthly income currently exceeds his expenditures because he is trying to save as much money as possible and be responsible in advance of his first child's birth later this summer. He himself has lost a tremendous amount of money by gambling, primarily through this operation

3

itself. These financial conditions are only by and large necessary if a fine is imposed, and if the Court agrees that one is not necessary, these conditions ought not be imposed either.

### III. Advisory Guidelines Range

The parties are in agreement that the total offense level, after adjusting for Mr. Prassas's acceptance of responsibility, is 10, which when combined with a criminal history category of I, results in an advisory guidelines range of 6-12 months' imprisonment, and placement in Zone B of the sentencing table.

### IV. Position Paper and Commentary on Sentencing Factors

#### A. Introduction

Mr. Prassas is a loving son, devoted husband, soon-to-be dedicated father, valued community member, hard-working, kind, and caring individual—and so much more. The sole reason he has found himself before a federal court with a pending criminal case is because he is also an individual whose adult life has been consumed at times by a terrible addiction to gambling. It has cost him unknown thousands of dollars. It has hurt his relationships. It has caused an unquantifiable amount of stress, anxiety, and hardship. But still, despite all that, Mr. Prassas remains a valued member of his community, and friend and positive influence to everyone in his life. He has gotten his personal issues under control, and with the exception of probation conditions helping him continue to stay on the right path, he is ready to welcome his new child to the world in July and put this case behind him.

It is for good fortune, then, that Mr. Prassas finds himself in a post-*Booker* world and before a court that has the authority to fashion a just and appropriate sentence. Indeed, as this Court is no doubt well aware, since *United States v. Booker*, 543 U.S. 220, 264 (2005), the applicable guidelines

range has been advice this Court should consider but is not required to follow. But even as advice, the guidelines may be flawed and are not to be presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 351 (2009) ("[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable").

Nevertheless, the guidelines remain a "starting point" and "initial benchmark" for this Court to consider in the determination of a just and appropriate sentence. *See Gall v. United States*, 552 U.S. 38, 49-51 (2007). As this Court is also well aware, per *Gall*, before determining which sentence is just and ultimately "sufficient but not greater than necessary to achieve the purposes of sentencing," it must consider all of the § 3553(a) factors.

The parties are in agreement that the total offense level, after adjusting for Mr. Prassas's acceptance of responsibility, is 10, which when combined with a criminal history category of I, results in an advisory guidelines range of 6-12 months' imprisonment, and placement in Zone B of the sentencing table.

Regardless, for the reasons that follow, counsel respectfully submits that the just and appropriate sentence in this case is a sentence of probation.

B.  The Nature and Circumstances of the Offense (§ 3553(a)(1))

With respect to the nature and circumstances of the offense, it is important to maintain perspective: Mr. Prassas is being sentenced for a non-violent offense, participation in an illegal gambling business for which he himself was very much a victim[1]. *See* 18 U.S.C. § 994(j); *Coleman v. Balkcom*, 451 U.S. 949, 952 (1981) (Stevens, J., concurring in denial of cert.) ("[t]he deterrent value

---

[1] As will be discussed further, Mr. Prassas suffered from a very bad gambling addiction. Mr. Delgiudice took full advantage of this, for example, by forgiving significant portions of his debt just to keep Mr. Prassas coming back and not running off to another bookmaker. His losses rose to somewhere in the six figures by his best estimate.

of any punishment is, of course, related to the promptness with which it is inflicted"); *United States v. Cornielle*, 171 F.3d 748, 754 (2d Cir. 1999) (pre-*Booker* decision granting one-level downward departure based on combination of circumstances including four-year pre-indictment delay); *United States v. Groos*, 2008 WL 5387852 (N.D. Ill. 2008) (Gotschall, J.) (granting variance in part based on four-year delay in indictment).

It is also appropriate to recognize that Mr. Prassas's offense, at least for his specific role in it, serious as it is, is becoming a *malum prohibitum* crime as opposed to *malum in se*. There is currently a Sportsbook under construction at the corner of Sheffield and Addison.[2] Even just the past week, news broke that Mayor Lightfoot selected Bally's planned casino for the former site of the Tribune Publishing Center.[3]

None of this changes the fact that Mr. Prassas's actions were harmful and illegal. But it does help place them in proper context. Finally, counsel notes that Mr. Prassas was cooperative upon his arrest and throughout the pendency of the case. Ultimately, of course, he chose to plead guilty, accept responsibility, and save the government considerable time and effort in prosecuting the offense.

C. The History and Characteristics of the Defendant (§ 3553(a)(1))

In determining the sentence to be imposed, the Court must also consider the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

---

[2] *See* https://www.espn.com/chalk/story/_/id/29799840/cubs-announce-plans-sportsbook-wrigley-field?ex_cid=espnapi_affiliate_abcotv.
[3] *See* https://twitter.com/chicagomayor/status/1522225151550623746.

### i. Mr. Prassas's Life Story

Vasilios Nicholas Prassas was born on October 20, 1982, in Park Ridge, Illinois, to his parents Christos and Kleanthi Prassas. PSI p. 9 ¶ 43. His parents were first generation immigrants who worked in the restaurant industry. They provided him with a positive childhood where everyone pitched in at the family restaurant. Mr. Prassas himself would pitch in by washing potatoes, making salads, and performing other odd tasks. *Id*. at ¶ 46. His parents believed having an education and strong work ethic were important, and they made sure Mr. Prassas grew up to have both. *Id*. at ¶ 47. Mr. Prassas noted that he was always adequately provided for, and the family took annual trips back to Greek or Cyprus. *Id*. at ¶ 46.

Mr. Prassas's father recently passed away in 2018 at the age of 78. *Id*. at ¶ 44. The two were extremely close and enjoyed a "great" relationship. *Id*. Mr. Prassas has followed in his father's footsteps in the restaurant industry, and tries to honor him every day. His passing was extremely difficult and was a contributing factor to many of his personal struggles.

His mother is currently 72-years-old and retired. *Id*. at ¶ 45. Mr. Prassas has one sister, Sophia, who he speaks to on a weekly basis. They have remained supportive of him throughout this process.

In June of 2021, Mr. Prassas married his partner, Karin Iceveski. *Id*. at ¶ 47. Karin is currently pregnant and the two are expecting their first child later this summer, in mid-July 2022. *Id*. The two currently reside in Elmwood Park along with Mr. Prassas's mother. *Id*. They have lived in this modest three-bedroom home since March of 2020. *Id*. at ¶ 48.

### ii. Mr. Prassas's Struggles with his Gambling Addiction

Mr. Prassas initially began gambling back in 2002 through the internet or mobile applications. PSI p. 11 ¶ 57. He would also visit casino with friends, and even initially, lost as much as a couple thousand dollars in a single day. *Id*. He first met Vincent Delgiudice approximately ten years ago after being introduced by a coworker at a restaurant where he was previously employed. A few weeks after first meeting him, Mr. Prassas set up an account to place bets for himself on Mr. Delgiudice's website. His limits were initially $100 per game and a maximum of $1,000 per week. The limit was later increased to $500 per game and a maximum of $20,000 per week. Mr. Prassas would routinely lose money, and regularly meet Mr. Delgiudice at various locations to settle his debts.

Between 2009 to mid-2010, altogether, Mr. Prassas probably paid Mr. Delgiudice approximately $15,000 to $20,000. In the process, Mr. Prassas did recruit some acquaintances to open accounts. After they stopped a couple years later, Mr. Prassas began playing himself on their accounts. His debt accumulated into the hundreds of thousands of dollars, and Mr. Prassas would do small favors for him in exchange for small reductions to his balance. As the PSI notes, things spiraled very close to completely out of control. While Mr. Prassas always managed to pay for basic necessities, his gambling addiction consumed his life. It caused untold stress, hardship, and anxiety, and continued to do so up until approximately six months prior to the indictment when Mr. Prassas quit cold turkey.

### iii. Mr. Prassas Personal Characteristics

As with most defendants, there is so much more to Mr. Prassas than the individual described in the indictment and in the discovery. In an effort to provide the Court more information, counsel

8

asked him to obtain character reference letters from his friends and family–those who know him best.

By way of example, Kris Boulhanis, the Director for the Midwest Region of Stoli Group USA, friend and professional acquaintance of Mr. Prassas since 2009, wrote to describe him as "someone that [he has] counted on to help [him] grow professionally and mentor [him] in the dynamics of the restaurant business." On a personal level, Kris described Mr. Prassas as "very reliable, "trustworthy," and some who has "always been available to help with anything [he has] ever asked of him."

Jacqueline Rosenau, who has known Mr. Prassas for over ten years and was formerly employed by him, describes how as a supervisor he "leads with authority but yet treats people with respect." She further described him as "not just a supervisor . . . [but] a down right good human being."

John Delicandro, a friend of Mr. Prassas' family since 1989, wrote to discuss a bit about Mr. Prassas' family background and upbringing. He describes how important family is to Mr. Prassas, and on a personal level, described him as "bright and personable," "highly self-motivated," and an "Elmwood Parker that all of us are proud of."

Janice Fields, the former President of McDonald's Corporation, and extremely accomplished business executive, wrote to describe Mr. Prassas as "a great leader and a role model to all of the employees that worked for him." She explains how Mr. Prassas has always taken the time to get to know his employee's families, "treat[s] everyone with dignity and respect," and that he is "a person that you would be proud to call your son." She concluded by noting that Mr. Prassas is well known

9

and valued within his community, is a positive individual, always willing to help non-profit organizations, and ultimately, is someone always there for others.

Andrew Hock, the Deputy Chief of Police for the Elmwood Park Police Department, began his letter by referencing the fact that he has known Mr. Prassas and his family for over thirty years, specifically describing how he has observed Mr. Prassas develop into a "hardworking young man." Deputy Hock explained that he has worked closely with Mr. Prassas in a variety of charitable and community initiatives, and through those experiences, had the opportunity to witness Mr. Prassas' personal character first-hand. Specifically, he described Mr. Prassas as hard-working, honorable, and one who values and respects others, among other positive characteristics.

Bruno Tassone, a lawyer in his own right, and retired Associate Judge of Cook County, former IRS agent—amongst other accomplishments—is an individual who has known Mr. Prassas for approximately 15 years. He wrote to describe Mr. Prassas' laudable work-ethic, positive personal disposition, and outgoing nature. Ultimately, he described Mr. Process as "dedicated, honorable, selfless and a trustworthy person."

Karin Linda Icevski, Mr. Prassas's wife, wrote to describe Mr. Prassas as extremely family oriented, one who has a big heart, and is always taking care of those around him. She notes that Mr. Prassas is "the most loyal person [she's] ever met," and despite the difficulties this case has caused him and her by extension, how excited they remain to start the rest of their lives together.

The foregoing is but a sampling of Mr. Prassas' character as revealed by those who know him best—her friends and family—and those who he will have to remain accountable to long after this case has concluded.

10

### iv. Collateral Consequences of a Felony Conviction

Beyond the generally applicable collateral consequences of a felony conviction—which are perhaps overlooked at sentencing hearings more than they should be—Mr. Prassas faces a unique one. Namely, given his life-long history and involvement in the restaurant industry, it is understandable that his future plans for his career and professional development involve following in his father's footsteps and one day owning a restaurant of his own. The ability to do so will become much more difficult now because, pursuant to 235 ILCS 5/6-2, Illinois does not issue liquor licenses to convicted felons.

### D. A Below Guidelines Sentence is Sufficient to Comply With the Factors Set Forth in 18 U.S.C. § 3553(a)(6).

18 U.S.C. § 3553(a)(6) mandates that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In fact, as the Supreme Court noted in *Booker*, Congress' "basic statutory goal" in enacting the guidelines was to implement "a system that diminishes sentencing disparity." *Booker*, 542 U.S. at 250.

The relevant point of comparison here, of course, is Mr. Prassas's co-defendants. They have received the following sentences or dispositions:

11

| Defendant | Sentence | Notes |
|---|---|---|
| Vince Delgiudice | 18 Months' BOP | |
| Matthew Knight | Two Years' robation | Sixth Months' community confinement. |
| Justin Hines | Two Years' Probation | Sixth months' community confinement. |
| Keith Benson | | Deferred Prosecution |
| Todd Blanken | Two Years' Probation | No home confinement. |
| Nicholas Stella | 15 months | Compassionate release denied as well. |
| Matthew Namoff | 24 Months' Probation | Six months' home detention. |
| Casey Urlacher | | Clemency |
| Eugene Delgiudice | 12 Months' Probation | Three months' home confinement. |

On this factor, it should also be noted that, according to the Sentencing Commission's interactive Data Analyzer, for the 59 defendants sentenced under Guideline § 2E3.1, 26 received a prison only sentence, three received a prison and alternative sentence, 17 received probation only, and 13 received probation and alternatives.[4] Altogether, given Mr. Prassas's role in the offense, relative culpability, and personal characteristics, this factor also favors the sentence requested by counsel.

---

[4] *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard.

## V. Conclusion

Mr. Prassas is every bit the remarkable individual described by counsel herein, his friends and family in the letters submitted to the Court, and then some. He is also a first-time offender who has been dealing with the consequences of his involvement in an illegal gambling business with his codefendants, and will continue to have to do so for some time. For the reasons set forth herein, Mr. Prassas is deserving of compassion and leniency from this Court. After considering the guidelines as a "starting point" and "initial benchmark," the Presentence Investigation Report, the information adduced at the sentencing hearing, and everything else this Court is required to consider, counsel respectfully submits that a non-custodial sentence is the just and appropriate sentence.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant

**Cheronis, Parente & Levitt LLC**
140 S. Dearborn Street, Suite 404
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

**CERTIFICATE OF SERVICE**

I, Damon M. Cheronis, hereby certify that on May 10, 2022, I electronically filed the foregoing **Sentencing Memorandum** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system, and in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, Local Rules 5.5 and 5.9, and General Order 16-0020.

                                        s/ Damon M. Cheronis
                                        Damon M. Cheronis
                                        Cheronis, Parente & Levitt LLC
                                        140 S. Dearborn Street Suite 404
                                        Chicago, Illinois 60603
                                        (312) 663-4644
                                        damon@cheronislaw.com